```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**BRET ADAMS,**

        **Plaintiff,**

  vs.                                   **Civil Action 2:13-cv-894**
                                           **Magistrate Judge King**

**GEORGE KARL,** *et al.,*

        **Defendants.**

<u>OPINION AND ORDER</u>

This is an action for breach of contract in which plaintiff alleges that defendant failed to pay for professional services rendered by plaintiff and as agreed to by the parties.[1]  With the consent of the parties, *see* 28 U.S.C. § 636(c), this matter is before the Court on defendant's motion for summary judgment, ECF No. 100, and on plaintiff's motion for summary judgment, ECF No. 101.  Because the record presents genuine issues of material fact, both motions are **DENIED**.

I

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[1] Additional claims had been asserted against defendant and other parties, but those claims were dismissed. *See Opinion and Order*, ECF No. 63. Defendant's counterclaim was also dismissed by stipulation of the parties. *Stipulation*, ECF No. 99.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for his motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Catrett*, 477 U.S. at 323. Once the moving party has carried his initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995)(the "nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary

judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

## II

Plaintiff alleges that defendant failed to pay for professional services provided by plaintiff, in violation of the parties' agreement. Under Ohio law,[2] "[g]enerally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed [his] contractual obligations; the other party failed to fulfill [his] contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 661 N.E.2d 218, 226 (Ohio Ct. App. 8th Dist. 1995). "To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a 'meeting of the minds' of both parties, and that the terms of the contract are definite and certain." *Frank Novak & Sons, Inc. v. A-Team, L.L.C.*, 6 N.E.3d 1242, 1249 (Ohio Ct. App. 8th Dist. 2014). *See also Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3-4 (2002) ("A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract."). Where the terms of an oral contract are unclear or in

---

[2] The parties do not disagree that Ohio law governs plaintiff's claim.

3

dispute, at least some Ohio courts have denied summary judgment. *See*, *e.g.*, *Lykins v. McCleese*, No. 94CA2266, 1995 WL 264954, at *4 (Ohio Ct. App. 4th Dist. May 8, 1995) (denying summary judgment where "the terms of the oral contract are in dispute" because such terms "are a significant factor in determining if the contract was breached and, if so, who breached the contract"); *Texas Corp. v. Grim Welding*, 58 Ohio App.3d 80 (Ohio Ct. App. 9th Dist. 1989) (finding genuine issues of material fact and denying summary judgment where "it is unclear from the record as to the terms and conditions of said oral agreement"). *Cf. Herlihy Moving & Storage, Inc. v. Adecco USA, Inc.*, No. 2:09-CV-931, 2010 WL 3607483, at *6 (S.D. Ohio Sept. 9, 2010) (finding a genuine issue of material fact as to a term of the oral contract and denying summary judgment on the plaintiffs' breach of oral contract claim).

### III

According to plaintiff, the parties orally agreed that, in exchange for plaintiff's negotiation of the terms of defendant's coaching contract with the Denver Nuggets, defendant would pay to plaintiff $10,000.00 per month for as long as defendant continued to receive compensation from that team, even if defendant was no longer coaching the team, through the end of the 2018 NBA season. Defendant acknowledges the existence of an oral agreement between the parties, but disputes plaintiff's articulation of the terms of that agreement. Defendant also moves for summary judgment, arguing that the terms of the oral contract described by plaintiff constitute an oral contingency fee agreement that violates an Ohio Supreme Court

4

disciplinary rule and is therefore unenforceable. In his reply, defendant also argues that the agreement described by plaintiff would violate the statute of frauds.

The Court finds that genuine issues of material fact permeate every claim and defense asserted by the parties. The Court therefore concludes that summary judgment on plaintiff's claim and defendant's defenses is unwarranted.

**A.**

Plaintiff avers that he and defendant

> entered in the Agreement whereby Affiant agreed to negotiate the terms of . . . the personal service coaching contract by and between Defendant and the Denver Nuggets in exchange for Defendant's agreement that he would tender monthly installment payments to Affiant in the amount of Ten Thousand Dollars and 00/100ths ($10,000.00) per month as compensation for the services provided by Affiant to defendant in negotiating the same. . . .

*Affidavit of Bret A. Adams*, ECF No. 101-1, ¶ 10 ("*Adams Affidavit*"). Plaintiff is entitled to these monthly payments, he contends, so long as defendant receives compensation from the Denver Nuggets, including compensation consisting of

> all deferred payments, received and/or to be received by Defendant under his then existing contract with the Denver Nuggets, irrespective of his employment status, including those deferred payments paid and or to be paid to Defendant through the close of the 2018 NBA season. . . .

*Id*. at ¶ 11. *See also id*. at ¶ 13. According to plaintiff, defendant's employment by the Denver Nuggets ended in June 2013, *id*. at ¶ 20, and he ceased making payments to plaintiff in January 2013, *id.* at ¶¶ 22, 28. Plaintiff therefore claims a right to 72 months' payment, *id*. at ¶ 29, and seeks damages "in an amount exceeding" $720,000. *Id*. at ¶ 30.

Defendant appears to concede the existence of an oral contract or

5

contracts between the parties. *See, e.g., January 29, 2015 Deposition of George Matthew Karl*, ECF No. 104-1, p. 280:14 ("Our agreements have never been in writing."). *But see id*. at p. 177:11 ("We never had an agreement."). It is also undisputed that defendant paid plaintiff $10,000 per month for a number of years. See *July 24, 2012 Deposition of George Karl*, ECF No. 102, p. 21:2-8.[3] However, there is substantial disagreement between the parties as to the terms of their agreement or agreements. Where plaintiff alleges that the agreement at issue in this action relates only to defendant's coaching contract with the Denver Nuggets, *Adams Affidavit*, ¶ 9, defendant testified that his monthly payments to plaintiff related to a wide range of on-going services provided by plaintiff to defendant:

> Q. . . . [I]s that what you were paying him to handle, your investments?
> A. There's investments, there's speaking engagements, there's endorsements, numerous – you know, buying cars, mortgages on houses. He advised me on all those things.
> Q. Basically all of the legal and financial aspects of your life, would that be fair to say, that's what you were paying $10,000 for – five to ten thousand?
> A. I thought I was – anything that had a legal ramification in a financial situation, yes.

*January 29, 2015 Deposition of George Matthew Karl*, ECF No. 104-1, p. 183:8-20.

> Q. Did Mr. Adams negotiate the settlement for you with the [Milwaukee] Bucks?
> A. He did.
> Q. Did he get paid for negotiating that settlement?
> A. He was my lawyer, so he was getting paid every month.
> Q. Based upon his monthly fee?
> A. His monthly fee.
> Q. And the monthly fee you paid him, that was for him

---

[3] This deposition was taken in connection with unrelated state court litigation, *Steven Simonetti, et al. v. Adams, Babner & Gitlitz, LLC*, No. 11-CVH-2192, and *Bret Adams v. Steven Simonetti*, Case No. 12CVH-4166, filed in the Court of Common Pleas for Franklin County, Ohio).

>       doing legal work and doing financial advising and handling
>       your investments?
>       A.     My feeling was basically to do legal work and the
>       partnerships and entities that we were involved in.

*Id.* at pp. 284:13-24; 285:1-3.

The record in this action is replete with conflicting evidence as to the terms of the parties' oral agreement or agreements. Although it is clear that defendant paid plaintiff moneys on a monthly basis, it is entirely unclear what the parties intended by those payments. Under these circumstances, plaintiff is not entitled to summary judgment on his breach of contract claim. *See Lykins*, 1995 WL 264954, at *4; *Texas Corp.*, 58 Ohio App.3d 80; *Herlihy Moving & Storage, Inc.*, 2010 WL 3607483, at *6.

## B.

The Court also concludes that defendant is not entitled to summary judgment on his defenses. Defendant argues that, even accepting plaintiff's version of the terms of the oral contract, that contract is an unenforceable oral contingency fee agreement that violates Rule 1.5 of the Ohio Rules of Professional Conduct.[4] Significantly, the parties disagree whether plaintiff, in rendering services to defendant, acted in his capacity as a lawyer. Plaintiff avers that he "represented George Karl over the course of their relationship as his agent[.]" *Adams Affidavit*, ¶ 4. Defendant, on the other hand, testified that "I've always portrayed [sic] Bret being my lawyer, not my agent." *January 28, 2015 Deposition of George Matthew*

---

[4] Although Ohio attorneys are permitted to charge a fee that is "contingent on the outcome of the matter for which the service is rendered," "[e]ach contingent fee agreement shall be in a *writing* signed by the client and the lawyer and shall state the method by which the fee is to be determined[.]" Ohio Rules of Prof'l Conduct R. 1.5(c)(1)(emphasis in the original).

7

*Karl*, ECF No. 104-1, p. 19:14-15. *See also id*. at 28:1-2 ("Bret was great because he did my lawyering for me."); *id*. at 85:7 ("He did all my lawyer work."). The Court is simply unable, on this record, to determine whether, in rendering services to defendant, plaintiff was acting as a lawyer such that he was subject to the Ohio Rules of Professional Conduct.

Moreover, and even assuming that plaintiff was acting in his capacity as a lawyer, the genuine issues of fact surrounding the terms of the parties' agreement prevent resolution of defendant's characterization of that agreement as a contingent fee agreement. Defendant argues that the fee described by plaintiff is contingent because it "depended upon successful negotiation of Mr. Karl's contracts, and the amount of his compensation then depended upon the length of that contract." *Defendant's Motion*, ECF No. 100, p. 6. Plaintiff, however, characterizes his claimed fee as a defined fee, payable over time, for services previously rendered in connection with the negotiation of the Denver Nuggets coaching contract. *Plaintiff's Response*, ECF No. 103, pp. 3-4.[5] Defendant's description of his monthly payments to plaintiff, *January 29, 2015 Deposition of George Matthew Karl*, ECF No. 104-1, pp. 183:8-20, 284:13-24; 285:1-3, would appear to qualify as a retainer against a variety of on-going legal services by plaintiff. Absent resolution of these issues of fact, the Court cannot

---

[5] "Plaintiff agreed to negotiate and facilitate that certain personal service coaching contract by and between Defendant and the Denver Nuggets, in exchange for Defendant's promise to tender monthly installment payments **at the flat rate** (emphasis added)[sic] of Ten Thousand Dollars and 00/100ths ($10,000.00) per month to Plaintiff for so long as Defendant was to receive compensation from the Denver Nuggets as consideration for the services provided by plaintiff to Defendant in negotiating the same."

meaningfully address defendant's defense in this regard.

For the same reason, the Court is also unable to resolve on this record defendant's statute of frauds defense, s*ee Defendant's Reply*, pp. 6-7, and defendant's contention that plaintiff's recovery, if any, is limited to the reasonable value of services actually rendered prior to defendant's discharge of plaintiff. *See Defendant's Motion*, p. 7; *Defendant's Reply*, pp. 7-8. See also *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St. 3d 570, 574, 629 N.E.2d 431, 435 (1994)("[A] client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge.").

Finally, and absent a clear determination of the parties' relationship, the Court is also unable to meaningfully evaluate plaintiff's contention that defendant waived his right to object to enforcement of the contract by withdrawing a grievance and disciplinary complaint made by him against plaintiff,[6] and by making monthly payments to plaintiff for a period of years. *Id.* at 5. *See Wheeling Corp. v. Columbus & Ohio River RR. Co.*, 147 Ohio App. 3d 460, 477, 771 N.E.2d 263, 276 (Ohio Ct. App. 10th Dist. 2001)(Waiver is "a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts.").

---

[6] Apparently, defendant filed a disciplinary complaint against plaintiff. Plaintiff argues that, in withdrawing that matter as part of the settlement of certain claims, defendant waived his right to defend against plaintiff's remaining breach of contract claim. *Plaintiff's Opposition*, pp. 5-6 (citing, *inter alia*, copy of letter dated January 6, 2016, signed by defendant and addressed to the Office of Disciplinary Counsel of the Supreme Court of Ohio, attached thereto as Exhibit 2).

9

The parties' motions for summary judgment, ECF No. 100, ECF No. 101, are therefore **DENIED**.

This case will be referred to mediation during the September 2016 Settlement Week.

**The Court will conduct a final pretrial conference on September 22, 2016, at 2:00 p.m.** A firm trial date will be established at that conference. The parties are **DIRECTED** to file a proposed final pretrial order no later than September 19, 2016.

                                                 *s/Norah McCann King*
                                                  Norah McCann King
                                       United States Magistrate Judge

August 3, 2016